# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00883-CR

---

**Victor Leon, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 264TH DISTRICT COURT OF BELL COUNTY
### NO. 52875, THE HONORABLE PAUL L. LEPAK, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Victor Leon was charged with committing the offense of aggravated sexual assault of a child, and the jury found him guilty in 2002. *See* Tex. Penal Code § 22.021. Leon did not appear at the punishment hearing the following day, but the punishment hearing proceeded in his absence. *See* Tex. Code Crim. Proc. art. 33.03. The jury assessed Leon's punishment at 80 years' imprisonment. *See* Tex. Penal Code § 12.32. When Leon was returned to Bell County seventeen years later, the trial court pronounced its judgment in Leon's presence, which was consistent with the jury's verdict. On appeal, Leon contends that the trial court erred by allowing the forensic interviewer to testify as an outcry witness, the sexual assault nurse examiner (SANE) to relay hearsay in her testimony, and the forensic interviewer to bolster the credibility of the victim, C.L. We will affirm the trial court's judgment of conviction.

## BACKGROUND

Leon was charged with aggravated sexual assault. The alleged victim was his daughter C.L. At the trial, C.L. testified that Leon began touching her inappropriately when she was approximately seven years old. More specifically, C.L. related that Leon touched her chest area and her genital area inside her underwear and continued to do so regularly until she turned twelve years old. C.L. described how Leon began inserting his penis into her vagina after she turned twelve, engaged in this behavior two to three times a week for three years, forced her to perform oral sex on him a couple of times a month, stopped the abuse when she confronted him about it, and moved out of the house between a year and a half to two years later. Additionally, C.L. testified that she told her mother about the abuse a few months after Leon moved out of the home, that her mother called Child Protective Services, that a forensic interviewer spoke with her, and that a SANE examined her.

Next, the forensic interviewer testified regarding the interview. In particular, the interviewer stated that C.L. became emotional and cried, that her emotional responses were appropriate given the subject matter being discussed, and that C.L. provided a chronological history of the events. In addition, the forensic interviewer related factors that are used to try to distinguish between truthful and false allegations.

Following the interviewer's testimony, the SANE who examined C.L. described the stages of a forensic exam, including first taking a history from the patient to know what to look for and what types of injuries to expect. Next, the SANE read C.L.'s statement that C.L. wrote during the exam regarding the history of the abuse. The SANE explained that she did not see any injuries during the examination but that it would have been unlikely for there to have been any injuries at the time of the exam given that the alleged abuse occurred in the past.

2

During Leon's case-in-chief, an individual who lived with C.L. and her family during some of the relevant time testified that she never saw any type of sexual abuse. Finally, Leon elected to testify and related that he did not abuse C.L. and could not have abused her because there were so many people living in the house and because he was never alone with her.

After considering the evidence presented at trial, the jury found C.L. guilty of aggravated sexual assault of a child. Leon appeals the trial court's judgment of conviction.

## DISCUSSION

In three issues, Leon contends that the trial court erred by allowing the forensic interviewer to testify as an outcry witness, the SANE to relay hearsay statements, and the forensic interviewer to bolster the credibility of C.L.

### Interviewer's Testimony

In his first issue, Leon argues that the trial court erred by allowing the forensic interviewer to testify as an outcry witness because the State did not provide notice that the interviewer would be testifying as an outcry witness and because no hearing was held to determine the reliability of her testimony before she was allowed to testify as required by the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 38.072, § 2(b). Further, Leon asserts that the interviewer was not the proper outcry witness because C.L. made an outcry to her mother before talking with the interviewer. *See id.* § 2(a).

Appellate courts review a trial court's ruling regarding the admission or exclusion of evidence for an abuse of discretion. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez*

3

*v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

Under the Rules of Evidence, hearsay is defined as a statement that "the declarant does not make while testifying at the current trial or hearing" and that "a party offers in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801. Hearsay is generally inadmissible, *see id.* R. 802, but article 38.072 of the Code of Criminal Procedure specifies that an outcry statement is not inadmissible on hearsay grounds in cases involving certain sexual offenses against children if the statement "describe[s] . . . the alleged offense," is "made by the child," and is "made to the first person, 18 years of age or older, other than the defendant, to whom the child . . . made a statement about the offense," and if the "trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement," Tex. Code Crim. Proc. art. 38.072, §§ 1, 2. Further, article 38.072 provides that it "applies only to statements" like those described above. *See id.* § 2.

In her testimony, the forensic interviewer did not discuss any statement made by C.L. regarding the abuse by Leon. On the contrary, the interviewer generally testified that she interviewed C.L., that C.L. discussed during the interview things that Leon did to her, that C.L. became tearful during portions of the interview, that C.L.'s emotional response seemed appropriate based on what she had described, and that C.L. provided a good chronological history of the events that happened. During her cross-examination, the interviewer discussed the ways in which interviewers can attempt to distinguish between a truthful and a false allegation.

4

The interviewer never relayed the "how, when, and where" of the abuse, *see Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd) (quoting *Hanson v. State*, 180 S.W.3d 726, 730 (Tex. App.—Waco 2005, no pet.)), did not testify that C.L. stated during the interview that Leon had sexually abused her or otherwise "describe[d] . . . the alleged offense," *see* Tex. Code Crim. Proc. art. 38.072, and did not relay any statements that C.L. made during the interview, *see* Tex. R. Evid. 801.

Accordingly, we conclude that the trial court did not abuse its discretion by allowing the interviewer to testify and by overruling Leon's objections based on the requirements of the outcry statute. *See* Tex. Code Crim. Proc. art. 38.072; *see also Rainey v. State*, 763 S.W.2d 470, 473 (Tex. App.—Houston [14th Dist.] 1988, no pet.) (explaining that "[a]rticle 38.072 applies only to statements that describe the alleged offense").

For these reasons, we overrule Leon's first issue on appeal.

**Testimony by the SANE**

In his second issue on appeal, Leon contends that the trial court erred by allowing the SANE "to relay hearsay statements made by C.L." during the forensic exam. Although Leon recognizes on appeal that the Rules of Evidence contain a hearsay exception for statements made for the purposes of medical diagnosis or treatment, *see* Tex. R. Evid. 803(4), he argues that the SANE's testimony exceeded the bounds of that exception. In particular, Leon asserts that the trial court erred by allowing the SANE to read the following written statement made by C.L. during the forensic exam:

> I was sexually assaulted by my father. It began when I was 7 and lasted until about 15. In the beginning he would touch me down around my bottom. He would feel around my vagina. As years went on, he began to have sexual intercourse

5

with me. He would insert his penis into my vagina. He never ejaculated. He would rub on my breast with his hands, and I would touch his penis. He would put his penis in my mouth. He always did this late at night and said if I told he could get in trouble. I'm dating an older guy now and he is 23 years old. My mom thought I was sexually active. And I said, "No." And that's when I told her.

After referring to the statement above, Leon highlights that the statement was made more than two years after the alleged abuse had stopped and argues that the statement quoted above did not pertain to C.L.'s medical history or symptoms and did not pertain to her diagnosis or treatment.

Because this issue, like the previous one, challenges an evidentiary ruling, we review the trial court's ruling for an abuse of discretion. *See Tillman*, 354 S.W.3d at 435. Although hearsay is generally inadmissible, the Rules of Evidence provide that the following types of statements are excluded from the rule against hearsay: "A statement that . . . is made for—and is reasonably pertinent to—medical diagnosis or treatment . . . and . . . describes medical history; past or present symptoms or sensations; their inception; or their general cause." Tex. R. Evid. 803(4). "For a statement to be admissible under this exception, the declarant must make the statement for the purpose of receiving medical treatment and the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." *Barnes v. State*, 165 S.W.3d 75, 82 (Tex. App.—Austin 2005, no pet.). "[A] child's statements to a physician or other health care professional describing sexually abusive acts and identifying the abuser can be admissible under rule 803(4)." *Id.* Courts have held that statements given to a SANE during a forensic examination can qualify for admission under Rule 803(4). *See San German-Reyes v. State*, No. 03-15-00432-CR, 2017 WL 2229873, at *11 (Tex. App.—Austin May 17, 2017, no pet.) (mem. op., not designated for publication); *Fahrni v. State*,

6

473 S.W.3d 486, 499 (Tex. App.—Texarkana 2015, pet. ref'd); *Franklin v. State*, 459 S.W.3d 670, 678 (Tex. App.—Texarkana 2015, pet. ref'd).

The exception contained in Rule 803(4) is based on the patient's selfish motive in receiving appropriate medical treatment, *Jones v. State*, 92 S.W.3d 619, 623 (Tex. App.—Austin 2002, no pet.), *overruled in part on other grounds by Taylor v. State*, 268 S.W.3d 571, 589 (Tex. Crim. App. 2008), and on "the assumption that the declarant appreciates that the effectiveness of the diagnosis or treatment may depend on the accuracy of the information provided," *Munoz v. State*, 288 S.W.3d 55, 58 (Tex. App.—Houston [1st Dist.] 2009, no pet.). The assumption that someone seeking medical treatment will tell the truth may not always apply to children because they may not fully understand "the need to be truthful with a physician." *See Barnes*, 165 S.W.3d at 82.

In her testimony, the SANE explained that she was "an OB-Gyn nurse practitioner" and described the special training that she has received to be certified as a SANE. Additionally, the SANE described the various parts of a forensic exam. In the first portion, the SANE obtains "a history in order . . . to help identify what you need to be looking for" and where to look for any potential injuries. C.L.'s statement quoted above was prepared during this portion of the exam and documented the types of abuse that C.L. was subjected to. After completing the history portion, the SANE performed an examination of C.L., including examining her genitals for injuries that may have been sustained during the abuse. *See id.* at 83 (noting that although physician was gathering evidence for possible prosecution, physician "was also conducting a legitimate medical examination").

Although Leon argues that C.L. indicated in her testimony that she reported the abuse approximately two years after the abuse ended, the record in this case does not establish

whether the SANE was aware of when the last incident occurred before beginning the exam. *See id.* at 83 (affirming admission under Rule 803(4) of statement detailing abuse when abuse was alleged to have occurred five years earlier). In any event, even if the SANE was aware that C.L. stated that the last act occurred years ago, "it was appropriate for" her to examine C.L. "to determine if the abuse was continuing or if the child suffered from a sexually transmitted disease" or other injury "as a result of the prior abuse." *See id.*

Moreover, although the SANE did not testify whether she asked if C.L. understood the need to be truthful as part of the exam, it was unnecessary to do so in this case where C.L. was sixteen or seventeen years old at the time of the exam and where nothing in the record indicated that she did not understand the importance of telling the truth for medical treatment. *See id.* (observing that it was not necessary for witness to have inquired into whether victim appreciated need to be truthful where victim was ten years old and was "sufficiently mature to be interviewed outside her grandmother's presence"); *see also Taylor*, 268 S.W.3d at 589 (explaining that for cases in which person is "on the physician's cold examination table" for diagnosis or treatment, it is "natural to presume that adults, and even children of a sufficient age or apparent maturity, will have an implicit awareness that the doctor's questions are designed to elicit accurate information and that veracity will serve their best interest" and that courts typically review record "not for evidence of such an awareness, but for any evidence that would *negate* such an awareness, even while recognizing that the burden is on the proponent . . . to show that the . . . exception applies"); *Franklin*, 459 S.W.3d at 677 (noting that courts "can infer from the record that the victim knew it was important to tell a SANE the truth in order to obtain treatment or diagnosis").

In light of the preceding, we conclude that the trial court did not abuse its discretion by concluding that C.L. understood the importance of being truthful when making a statement to the SANE and that C.L.'s statement was reasonably pertinent to diagnosis or treatment. *See Mata v. State*, No. 03-15-00220-CR, 2016 WL 859037, at \*5-6 (Tex. App.—Austin Mar. 4, 2016, no pet.) (mem. op., not designated for publication); *Barnes*, 165 S.W.3d at 83. For these reasons, we also conclude that the trial court did not abuse its discretion by allowing the SANE to testify regarding the contents of C.L.'s statement, including the portion in which she identified Leon as the offender, under Rule 803(4). *See Fahrni*, 473 S.W.3d at 496, 499 (affirming trial court's ruling allowing SANE to read statement given by victim under Rule 803(4)).

Therefore, we overrule Leon's second issue on appeal.

**Bolstering**

In his final issue on appeal, Leon contends that the forensic examiner was improperly allowed to bolster C.L.'s testimony. *See Cohn v. State*, 849 S.W.2d 817, 819-20 (Tex. Crim. App. 1993) (explaining that term bolstering is used to refer to evidence that is offered for sole purpose of persuading fact-finder that prior witness is worthy of credit without substantively contributing "to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence"); *see also Rivas v. State*, 275 S.W.3d 880, 886 (Tex. Crim. App. 2009) (noting that "[t]he law of 'bolstering' existed before . . . Rules of Evidence were adopted," that term "failed to survive the adoption of the Rules," and that it is "slowly dying as an objection on its face"). In particular, Leon contends that the interviewer testified that C.L.'s emotional responses were appropriate

9

given what she discussed, that C.L. cried during portions of the interview, and that she did not have any problem with C.L.'s statements during the interview. After referencing portions of the interviewer's testimony, Leon argues that the interviewer "effectively testified that C.L. was telling the truth which is expressly prohibited by the Rules of Evidence."

Generally, before a party may present "a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion" and that "the trial court . . . ruled on the request, objection, or motion, either expressly or implicitly" or "refused to rule on the request, objection, or motion, and the complaining party objected to the refusal." *See* Tex. R. App. P. 33.1(a). In this case, Leon presented no bolstering objection to the trial court and has, therefore, failed to preserve that complaint for appellate consideration. *See Franco v. State*, 339 S.W.3d 793, 795 (Tex. App.—Amarillo 2011, no pet.) (concluding that appellant failed to preserve issue asserting that complainant's mother's testimony improperly bolstered truthfulness of complainant's allegations); *Reyes v. State*, 267 S.W.3d 268, 274 (Tex. App.—Corpus Christi 2008, pet. ref'd) (determining that appellant waived bolstering issue on appeal because appellant's objections at trial did not comport with bolstering argument on appeal); *see also Darcy v. State*, 488 S.W.3d 325, 327 (Tex. Crim. App. 2016) (noting that preservation of error is systemic requirement on appeal); *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012) (observing that reviewing courts should not address merits of issue that has not been preserved for appeal).

For these reasons, we overrule Leon's third issue on appeal.

10

## CONCLUSION

Having overruled all of Leon's issues on appeal, we affirm the trial court's judgment of conviction.

_____
Thomas J. Baker, Justice

Before Chief Justice Byrne, Justices Baker and Triana

Affirmed

Filed:   May 27, 2021

Do Not Publish

11